UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TYSHAWN L. YOUNG,

          Plaintiff,

   v.

LYNN WESSEL KEAN[1] et al.,

          Defendants.

23-CV-800-LJV-LGF
DECISION & ORDER

---

On August 8, 2023, the pro se plaintiff, Tyshawn L. Young, commenced this action under 18 U.S.C. § 241, 18 U.S.C. § 242, and 42 U.S.C. § 14141.[2]  Docket Item 1. In short succession thereafter, and without leave of the Court[3] or the written consent of the defendants, Young filed three amended complaints.  *See* Docket Items 3, 5, and 7. Young raises claims related to a guardianship proceeding that allegedly interfered with his ability to make decisions about his mother's medical care.  *See* Docket Items 1, 3, 5, and 7.  On September 19, 2023, the case was referred to United States Magistrate

---

[1] Defendant Lynn Wessel Keane has been incorrectly named as "Lynn Wessel Kean."  Defendant Emily H. O'Reilly has been incorrectly named as "Emily H. O'Reily." Defendant Aaron Chang has been incorrectly named as "Arron Chang."  The Clerk of the Court shall correct the electronic docket to reflect those defendants' correct names.

[2] The Violent Crime Control and Law Enforcement Act of 1994 "originally appeared as 42 U.S.C. § 14141 and has been recodified as 34 U.S.C. § 12601." *Robinson v. City of Conway*, 2025 WL 1788659, at *2 (D.S.C. June 30, 2025).

[3] The case originally was assigned to United States District Judge John L. Sinatra, Jr.; after he recused himself on May 7, 2025, it was reassigned to this Court. *See* Docket Item 84.

Judge Leslie G. Foschio for all proceedings under 28 U.S.C. § 636(b)(1)(A) and (B).

Docket Item 19.

Across his four complaints, Young names a total of eighteen defendants:

Thomas J. Quatroche, the Chief Executive Officer of the Erie County Medical Center

("ECMC"); Lynn Wessel Keane, a New York State Supreme Court Justice; Dennis

Glascott, Keane's law clerk; Lakeema Ithna-Asheri, Young's niece and his mother's

eventual guardian; Amy Terrose; Sara Hall; James Lockwood; Mendit Path; Eian

Keneedy; Heidi Smith; Menda Puttin; Ashley Eason;[4] Emily H. O'Reilly, the attorney

representing ECMC in the guardianship proceeding; Mark Peszko, the Court Evaluator

in the guardianship proceeding; Matthew Lazroe, an attorney who represented Young in

connection with the guardianship proceeding; Aaron Chang, the CEO of Sisters of

Charity Hospital; Joseph Ruffolo,[5] the CEO of Niagara Falls Memorial Medical Center;

and Sarah Alessi,[6] the CEO of "Maple Senior Apt."

---

[4] Young alleges that Terrose, Hall, Lockwood, Path, Keneedy, Smith, and Puttin are all associated with "Ellicott Center for the Nursing Home," while Eason is associated with "Niag[a]ra Rehab." *See* Docket Item 7 at 1-2. But the attorney for those defendants has since noted that they are associated with, respectively, Ellicott Center Rehabilitation and Nursing and Niagara Rehabilitation and Nursing Center. Docket Item 40. When this decision and order quotes from the complaints, some capitalization is omitted.

[5] Young first named Ruffolo as a defendant in his amended complaint. *See* Docket Item 3 at 5. Throughout this decision, page numbers in docket citations refer to ECF pagination.

[6] Alessi was not named as a defendant until Young's third amended complaint. *See* Docket Item 7. Moreover, as Judge Foschio noted, *see* Docket Item 65 at 5, the docket does not reflect that she was ever served with a copy of the third amended complaint. Judge Foschio concluded that she therefore had "not been joined as a defendant to this action." *See id.* at 5 n.3.

On September 21, 2023, Peszko moved to dismiss.  Docket Item 23.  A week later, Keane and Glascott (collectively, the "state court defendants") moved to dismiss and to strike Young's second and third amended complaints as improperly filed.  Docket Item 31.  A short time later, O'Reilly and Quatroche (collectively, the "ECMC defendants") also moved to dismiss.  Docket Item 34.  Ruffolo, who had initially answered Young's third amended complaint, Docket Item 18, then moved both to dismiss and for judgment on the pleadings.  Docket Item 51.

In the meantime, Young made a submission styled as a "rebuttal" as to Lazroe, Docket Item 33,[7] and another as to Ruffolo, Docket Item 53.  But Young did not otherwise respond to any of the defendants' motions.  Instead, he filed three motions of his own: one for a preliminary injunction and temporary restraining order, Docket Item 39; another for a default judgment against Quatroche, Docket Item 46; and a third "to come now my mother got killed," Docket Item 59.[8]

On September 24, 2024, Judge Foschio issued a Report and Recommendation ("first R&R") finding that (i) Peszko's motion to dismiss should be granted; (ii) Ruffolo's motion for judgment on the pleadings[9] should be granted; (iii) the ECMC defendants'

---

[7] Young's rebuttal to Lazroe was styled as a rebuttal to Peszko, but Young wrote a letter to the Court clarifying that the rebuttal "was for . . . Lazroe."  *See* Docket Item 35.

[8] In addition to those three motions, Young made numerous other submissions, including a "Notice of Affidavit to Cure," Docket Item 36 (some capitalization omitted), a "Notice of Felony," Docket Item 44 (some capitalization omitted), an "Affidavit of Truth," Docket Item 50 (some capitalization omitted), an "Affidavit of Support," Docket Item 57 (some capitalization omitted), and an "Affidavit of Notice of Injunction Permanent Restraining Order," Docket Item 58 (some capitalization omitted).

[9] Because Ruffolo had answered the complaint, Docket Item 18, before moving to dismiss the complaint "pursuant to Federal Rules of Civil Procedure 12(c), 12(h)(2), and 12(b)(6)," Docket Item 51, Judge Foschio concluded that the motion was

motion to dismiss should be granted; (iv) the state court defendants' motion to dismiss and strike Young's third amended complaint should be granted in part and denied in part;[10] and (v) Young's motions for a preliminary injunction and temporary restraining order, for a default judgment as to Quatroche, and "to come now my mother got killed,"[11] all should be denied.  Docket Item 65 at 34.[12]  Judge Foschio recommended

---

"technically for judgment on the pleadings pursuant to Rule 12(c) . . . as [opposed] to Rule 12(b)(6)," *see* Docket Item 65 at 19 n. 17.  Judge Foschio also noted that Rule 12(h)(2) "does not provide for any specific relief, but[] instead[] provides, in relevant part, that a failure to state a claim for which relief can be granted can be raised in a motion for judgment on the pleadings pursuant to Rule 12(c)."  *See id.* at 7 n.6.

[10] More specifically, Judge Foschio recommended that the state court defendants' motion should be denied insofar as it asks to strike Young's second and third amended complaints, *see* Docket Item 65 at 17, but granted insofar as it asks to dismiss the complaint, *see id.* at 25 and 33.

[11] In the first R&R, Judge Foschio analyzed Young's motion "to come now my mother got killed" as a motion for wrongful death.  *See* Docket Item 65 at 11.  At some points in his submissions, Young suggests that his mother has passed away, *see* Docket Item 88 at 5 and Docket Item 94 at 20, but Judge Foschio noted that any allegations that his mother has passed away did not appear in Young's third amended complaint, *see* Docket Item 65 at 13; *see also id.* at 11 n.12 ("Silmon's death has not been established either by [Young] nor by any of the [d]efendants.").

[12] In the alternative, Judge Foschio analyzed the ECMC and state court defendants' arguments that Young's claims against them also should be dismissed "for insufficient process and insufficient service of process."  *See* Docket Item 65 at 25.  Judge Foschio concluded that the relevant summonses "did not comply with [Federal] Rule [of Civil Procedure] 4(a) and the motions seeking dismissal for such non-compliance should be granted."  *See id.* at 29 (some capitalization omitted).  He also found that "the motions pursuant to [Federal] Rule [of Civil Procedure] 12[b](5) for insufficient service of process should be granted" because "nothing on the [d]ocket suggests [Young] followed up the personal delivery of the summons on any [d]efendant with the required mailing."  *See id.* at 31 (some capitalization omitted).  But Judge Foschio recommended that if the Court "reject[ed his] initial recommendation that [Young's third amended complaint] should be dismissed[] with prejudice and without leave to replead[] for failure to state a claim and for judgment on the pleadings," Young should be given an extension of time "to effect sufficient service of process" prior to dismissal.  *See id.* at 32.  Because the Court agrees with Judge Foschio's other bases for dismissing Young's claims against the state court and ECMC defendants without leave to amend, the Court need not, and does not, further address Judge Foschio's

that Young's claims against Peszko, the ECMC defendants, the state court defendants, and Ruffolo be dismissed with prejudice and without leave to amend. *See id*. at 24-25, 34.

Judge Foschio found that Young's motion for an injunction sought relief that was precluded by the Anti-Injunction Act. *See* Docket Item 65 at 9-10. He found that Young's motion for a default judgment against Quatroche should be denied because a default had not been granted against Quatroche under Federal Rule of Civil Procedure 55(a). *See id*. at 10-11. And he found that Young could not pursue an action for wrongful death because he had not established that he had "been appointed as administrator or a personal representative of his mother's estate, that he is the sole beneficiary of the estate, and that the estate has no other creditors." *See id.* at 12.

Judge Foschio also found that Young had not stated a viable claim against Peszko, the ECMC defendants, the state court defendants, and Ruffolo and that his claims against those defendants should be dismissed without leave to amend. *Id.* at 34. Judge Foschio noted that two of the three statutes Young invoked, 18 U.S.C. §§ 241 and 242, are criminal statutes that do not create a private right of action, and that the

---

recommendations related to insufficient process or service. Moreover, as discussed below, because the problems with Young's claims are substantive such that it is "beyond doubt that [Young] can prove no set of facts in support of his claim which would entitle him to relief," *see Lerman v. Bd. of Elections*, 232 F.3d 135, 140 (2d Cir. 2000) (internal quotation marks omitted), dismissal instead of an opportunity to correct his process or service of process is warranted. *See Pruthi v. Empire City Casino*, 2022 WL 596370, at *5 (S.D.N.Y. Feb. 8, 2022) (dismissal appropriate even where "there is reason to believe that [plaintiff] may be able to properly serve [d]efendants" because complaint "fails to state a plausible claim").

third statute, 42 U.S.C. § 14141, related to the "administration of juvenile justice or the incarceration of juveniles" and thus did not apply to Young's claims.[13]  *See id.* at 20-22.

In light of Young's pro se status, Judge Foschio broadly construed Young's claims as arising under 42 U.S.C. §§ 1983[14] and 1985(3).  *See id.* at 22-23.  But Judge Foschio concluded that Young had not plausibly alleged claims under either statute because he did not identify any constitutional right that any defendant had violated or allege that the defendants "conspired to participate in any constitutional harms . . . based on [Young]'s membership in any protected class."  *See id.* at 22-25.  Finally, Judge Foschio recommended dismissal of the claims against the state court defendants, Wessel Keane and Glascott, because those two defendants were entitled to absolute judicial immunity.  *See id.* at 33.

Young filed two responses, Docket Items 67[15] and 68,[16] which Judge Foschio construed as objections to the first R&R, *see* Docket Item 70.  Young then filed five

---

[13] Judge Foschio also noted that 42 U.S.C. § 14141 has no private right of action. Docket Item 65 at 21-22.

[14] Young briefly refers to 42 U.S.C. § 1983 in his third amended complaint, *see* Docket Item 7 at 11, but he does not raise it as one of the three causes of action.

[15] In his first response, Young appeared to move to disqualify Judge Foschio. *See* Docket Item 67 at 1 (stating that Judge Foschio "violated . . . 28 [U.S.C.] § 455 – Disqualification of Judge, Justice or Magistrate Judge").  On October 8, 2024, Judge Foschio denied that motion.  Docket Item 69.

[16] Because Young's second response contained personally identifiable information, it was sealed and a redacted version was made accessible on the docket. *See* Docket Item 95.  Subsequent citations in this decision to Young's second response are to the redacted version of that document.

notices, Docket Items 71, 72,[17] 73, 76, and 83, and moved to amend his complaint again, Docket Item 77.[18]  No defendants objected to the first R&R, but the state court defendants, Ruffolo, and the Ellicott Center defendants responded to Young's motion to amend, *see* Docket Items 78, 79, and 82.

Shortly before Judge Foschio issued the first R&R, defendants Eason, Smith, Terrose, Keneedy, Hall, Path, Putin, and Lockwood (collectively, the "Ellicott Center defendants")—all of whom had already answered, Docket Item 47—moved for judgment on the pleadings.  Docket Item 63.[19]  None of Young's numerous filings seem to respond to the Ellicott Center defendants' motion to dismiss.  Nevertheless, the Ellicott Center defendants filed a "[r]eply" on October 31, 2024.  Docket Item 74.

On June 3, 2025, Judge Foschio issued another R&R ("second R&R"), this one recommending that the Ellicott Center defendants' motion for judgment on the pleadings be granted and that Young's motion to amend be denied.  Docket Item 86 at 5.  In doing so, Judge Foschio conducted the same analysis as he did in the first R&R and concluded that Young had failed to plausibly allege claims under 18 U.S.C. § 241, 18 U.S.C. § 242, 42 U.S.C. § 14141, or, construing Young's claims liberally, 42 U.S.C. §§ 1983 or 1985(3).  *See id.* at 11-15.  Judge Foschio also recommended that Young's

---

[17] Some of Young's notices also included certain pages titled as motions for leave to file an amended complaint.  *See* Docket Item 72 at 5; Docket Item 73 at 2.

[18] Young later moved to hold Judges Sinatra and Foschio in contempt, Docket Item 81.  On June 3, 2025, Judge Foschio denied that motion.  Docket Item 87.

[19] The Ellicott Center defendants' motion was styled as a motion to dismiss but also sought relief under Federal Rule of Civil Procedure 12(c).  *See* Docket Item 63 at 1.  As he had done with Ruffolo's similar motion, Judge Foschio treated that motion as a motion for judgment on the pleadings.  *See* Docket Item 86 at 7.

motion to amend be denied because the motion "provide[d] no hint of any additional facts or law that would support any claim against any [d]efendant."  *See* Docket Item 86 at 17-18.

In the second R&R Judge Foschio also recommended that this Court dismiss Young's claims, sua sponte, against the three defendants who had not yet moved to dismiss or for judgment on the pleadings—Chang, Lazroe, and Ithna-Asheri.  *See id.* at 18-21.[20]  Just as Judge Foschio had previously recommended that the claims against Peszko, Ruffolo, the state court defendants, and the ECMC defendants be dismissed "without leave to replead," *see* Docket Item 65 at 25, he recommended that Young's claims against the Ellicott Center defendants and any other defendants be dismissed without leave to amend, *see* Docket Item 86 at 18.

Young did not object to the second R&R, but he filed several new submissions, including another proposed amended complaint.  *See* Docket Item 91.[21]

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The court must review de novo those portions of a magistrate judge's recommendation to which a party objects.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

---

[20] As noted earlier, Judge Foschio concluded that Alessi had "not been joined as a defendant to this action."  Docket Item 86 at 4 n.3.

[21] Young's submissions following the second R&R include a "Demand for Immediate Review, Case Conference, and Enforcement of Damages," Docket Item 88; a "Notice of Claim and Counteraffidavit," Docket Item 89; a "Notice of Injunction Violation & Evidence Tampering," Docket Item 92; a "Demand for Pretrial Settlement Conference & Judicial Accountability," Docket Item 93; and an "Affidavit of Peace and Friendship," Docket Item 94.  The Court has considered each of those submissions in issuing this decision and order.

This Court has carefully and thoroughly reviewed Judge Foschio's two detailed R&Rs; the record in this case; Young's responses and other submissions; and the materials submitted to Judge Foschio.  Based on that de novo review, the Court accepts and adopts Judge Foschio's recommendations to deny Young's motions for a preliminary injunction and temporary restraining order, Docket Item 39; for a default judgment against Quatroche, Docket Item 46; and "to come now my mother got killed," Docket Item 59.  The Court also accepts and adopts Judge Foschio's recommendations to grant Peszko's motion to dismiss, Docket Item 23; grant in part and deny in part the state court defendants' motion to dismiss and strike, Docket 31; grant the ECMC defendants' motion to dismiss, Docket Item 34; grant Ruffolo's motion for judgment on the pleadings, Docket Item 51; and grant the Ellicott Center defendants' motion for judgment on the pleadings, Docket Item 63.  Likewise, the Court accepts and adopts Judge Foschio's recommendation to deny Young's motion to amend, Docket Item 77, and to sua sponte dismiss Young's claims against Chang, Lazroe, and Ithna-Asheri. Finally, as discussed below, the Court sua sponte dismisses Young's claims against Alessi.

### DISCUSSION[22]

On a motion to dismiss or for judgment on the pleadings, the court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."

---

[22] The Court assumes the reader's familiarity with the facts alleged in the third amended complaint, Docket Item 7, and Judge Foschio's analysis in the two R&Rs, Docket Items 65 and 86, and refers to them only as necessary to explain its decision here.

*Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016); *see L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011). The Court therefore accepts Young's allegations as true and views the facts in the light most favorable to him.

Young's claims relate to the defendants' alleged interference with a power of attorney and health care proxy designation that his mother, Althea Silmon,[23] granted to him. *See* Docket Item 7 at 6. As Judge Foschio described in more detail in the first R&R, Docket Item 65 at 7-8, after Silmon was admitted to ECMC in 2022, state court proceedings resulted in Ithna-Asheri, Young's niece and Silmon's granddaughter, being appointed Silmon's guardian. *See* Docket Item 7 at 7 (third amended complaint) (noting that Ithna-Asheri's name appeared alongside index number and Wessel Keane's name) and 10 (alleging that certain defendants "insist[ed Young] had no power of attorney" and "that the [g]uardian has more power"); *see also* Docket Item 23-9 (state court order[24] under article 81 of the New York Mental Hygiene law appointing Ithna-Asheri as "permanent guardian of the person and property of Alethea Silmon"). The crux of Young's claims is that Ithna-Asheri's appointment as Silmon's guardian ended his control over Silmon's medical care despite the fact that Silmon had given Young her power of attorney and designated him as her health care proxy. *See, e.g.,* Docket Item

---

[23] In his third amended complaint, Docket Item 7, Young spells his mother's name as Althea, but other submissions sometimes refer to her as Alethea. In this decision and order, the Court uses the spelling in the third amended complaint.

[24] This Court may and does take judicial notice of the court order and other filings in the state court guardianship proceeding. *See Rates Tech. Inc. v. Speakeasy, Inc.*, 685 F.3d 163, 166 n.3 (2d Cir. 2012) ("We may 'take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings.'" (quoting *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006))).

7 at 10 (alleging that, when meeting with Young, certain defendants "insist[ed he] had no power of attorney") and 11 (alleging that, during a visit to Silmon, certain defendants told Young he was "not allow[ed]" to take her to a hospital). Young alleges that as a result, his mother's health deteriorated. *See id.* at 9 and 11.

## I.    YOUNG'S OBJECTIONS

In his responses, Young does not appear to object to any specific aspect of Judge Foschio's analysis. Instead, as in his myriad other submissions, he repeats the same arguments that he made prior to the two R&Rs, and he attaches a variety of documents, some of which appear to have no relevance to this action. For example, Young (i) accuses Wessel Keane of ignoring the prior power of attorney his mother granted him, *see* Docket Item 67 at 28; (ii) accuses Quatroche of creating "fraudulent documents," *see id.* at 27; Docket Item 95 at 3; (iii) says that Lazroe deceived him, *see* Docket Item 67 at 27; (iv) accuses ECMC of kidnapping his mother, *see* Docket Item 95 at 4; (v) submits a notice purportedly issued by the "Vizir of the Morocco Consular Court," *see* Docket Item 67 at 35; (vi) accuses Quatroche of "ignor[ing] contract laws," *see* Docket Item 95 at 3; and (vii) repeatedly attaches the agreement that he says vested him with his mother's power of attorney,[25] *see* Docket Item 67 at 2-13; Docket Item 95 at 15-26.[26]

---

[25] The agreement that Young attached to his two responses includes a form related to Silmon's power of attorney, but it does not address whether Young was designated as his mother's health care proxy. *See* Docket Item 67 at 2-13; Docket Item 95 at 15-16. In fact, the agreement specifically notes that if Silmon wanted Young to make health care decisions for her, a separate agreement needed to be executed. *See* Docket Item 67 at 2; Docket Item 95 at 15.

[26] Even if Young's references to the UCC and a "a private contract" that had been breached, *see, e.g.*, Docket Item 95 at 5, are specific objections to the first R&R

"When only a general objection is made to a portion of a magistrate judge's report[ and] recommendation, the Court subjects that portion . . . to only a clear error review." *Teaque v. Mullen*, 2020 WL 858355, at *3 (N.D.N.Y. Feb. 12, 2020) (emphases omitted) (citing, inter alia, Fed R. Civ. P. 72). The same is true when "an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge" or no objection is made at all. *Id.* "When performing such a clear error review, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.* (citation and internal quotation marks omitted).

---

suggesting that Judge Foschio did not address the only plausible contract-related claim the Court can conceive of in this scenario—a potential claim for tortious interference with contract—that argument is unpersuasive.

"Under New York law, the elements of tortious interference with contract are (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d Cir. 2006) (citation and internal quotation marks omitted). If Young's claims are construed as generously and broadly as possible, the contract between Young and a third party would be the agreement between him and Silmon allegedly granting him power of attorney and designating him as his mother's health care proxy. But Young does not raise a viable claim for tortious interference with that contract for the simple reason that the agreement was not breached.

The agreement Young attaches to his objections specifically indicates that the power of attorney could be terminated by Silmon's "death or [an]other event described in section 5-1511 of the General Obligations Law," *see* Docket Item 95 at 19, a law that specifies that a power of attorney is terminated when "a court order revokes the power of attorney," *see* N.Y. Gen. Oblig. L. § 5-1511. A court order revoking the power of attorney is precisely what occurred in Silmon's guardianship proceedings, where Wessel Keane's order appointing Ithna-Asheri as Silmon's guardian provided that "all prior power of attorney or health care proxy documents executed by . . . Silmon[] are hereby revoked and declared null, void, and invalid as a matter of law." *See* Docket Item 23-9 at 6. The Court thus fails to see how, based on Young's allegations, the prior agreement was breached (as necessary to establish tortious interference with contract).

Nevertheless, and despite not being required to do so, this Court has reviewed both R&Rs de novo in light of Young's objections to the first R&R, Docket Items 67 and 95, and his numerous other filings in the wake of both R&Rs. Following that review, the Court agrees with Judge Foschio that for the reasons stated in the R&Rs, Young has failed to state a claim against any of the defendants and that the state court defendants, Wessel Keane and Glascott, are entitled to absolute immunity.[27] Likewise, the Court agrees with Judge Foschio that because Young does not allege any constitutional injury that he suffered as a result of his membership in a protected class, he has failed to state a claim under 42 U.S.C. §§ 1983 or 1985(3).

## II.    LEAVE TO AMEND

In both R&Rs, Judge Foschio recommended that Young's claims be dismissed without leave to amend. *See* Docket Item 65 at 25; Docket Item 86 at 18. And in his second R&R, Judge Foschio recommended that the Court both deny Young's motion to amend and sua sponte dismiss Young's claims against Ithna-Asheri, Lazroe, and Chang. *See* Docket Item 86 at 18-21.

Generally, courts afford pro se plaintiffs an opportunity to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citation and internal quotation marks omitted); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("A pro se complaint is to be read liberally. Certainly

---

[27] In one submission, Young appears to challenge Judge Foschio's judicial immunity analysis on the grounds that "[n]o man, woman, or agent has immunity from liability under [d]ivine, [n]atural, or [c]ommon law." *See* Docket Item 90 at 2. This Court disagrees, and Young's assertion to the contrary does not change the Court's mind.

the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999))).

On the other hand, "denial of leave to amend is proper where the request gives no clue as to how the complaint's defects would be cured." *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) (internal quotation marks omitted). And "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (per curiam).

Judge Foschio recommended denying Young's motion to amend because "the problems with [Young]'s claims, as pleaded, are substantive such that further pleading cannot cure them and would be futile." *See* Docket Item 86 at 17 (citing *Cuoco*, 222 F.3d at 112). The Court wholeheartedly agrees with that analysis as it relates to Young's claims raised under 18 U.S.C. §§ 241 and 242 and 42 U.S.C. § 14141. As Judge Foschio noted, 18 U.S.C. §§ 241 and 242 are criminal statutes without private rights of action, *see* Docket Item 65 at 20-21 (citing *Harris v. Ammerman*, 2022 WL 1516709, at *8 (W.D.N.Y. Mar. 18, 2022)), while 42 U.S.C. § 14141 relates to the incarceration of juveniles (and also has no private right action), *see* Docket Item 65 at 21-22 (citing 34 U.S.C. § 12601). Amendment as to those claims is plainly futile.

Whether to give Young leave to replead claims under 42 U.S.C. §§ 1983 and 1985(3) is a closer question. This Court is hesitant to dismiss a pro se plaintiff's claims without giving at least one opportunity to amend. But Young already has amended his complaints numerous times. *See* Docket Items 3, 5, and 7. And more important, after

14

conducting a thorough review of Young's submissions and in light of the circumstances here, the Court does not see how he possibly could allege a viable claim under either statute.

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege

(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.

*Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). That conspiracy must be "motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *United Bhd. of Carpenters v. Scott*, 463 U.S. 825, 829 (1983) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). Such a claim also "require[s] a showing of an underlying constitutional violation," *Edwards v. Horn*, 2012 WL 473481, at *19 (S.D.N.Y. Feb. 14, 2012), and "a plaintiff 'must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" *Webb v. Goord*, 340 F.3d

105, 110-11 (2d Cir. 2003) (quoting *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)).

In his objections to Judge Foschio's first R&R, Young frequently refers to rights that he has been "deprived" of, sometimes with accompanying references to a conspiracy. *See, e.g.*, Docket Item 67 at 24 ("They have conspire[d] together to deprive me of my rights and privileges."); Docket Item 95 at 2, 4, and 5. But those objections still do not allege any constitutional right[28] that the defendants infringed. And Young made those submissions in response to the first R&R which found that he had not identified the constitutional right infringed by the defendants. So Young knew that he had not identified any right that the defendants allegedly deprived him of, but he did not correct that deficiency. And what is more, Young's responses provide nothing more than conclusions in support of any conspiracy to deprive him of his rights.

Young seems to be unhappy with the manner in which the state court appointed Ithna-Asheri as Silmon's guardian. *See* Docket Item 7 at 8 ("I did not . . . consent on the record." (some capitalizations omitted)); Docket Item 67 at 27 ("I beg [sic] [Justice] Lynn [W]essel [K]eane to read[] [m]y power of attorney." (some capitalizations omitted)). But his remedy for that, as Judge Foschio noted, *see* Docket Item 65 at 23 n. 18, is an appeal or a collateral attack on that judgment in the state court system, not a lawsuit in

---

[28] At one point in his motion to amend, Young seems to accuse Judges Sinatra and Foschio of violating his right to "substantive due process." *See* Docket Item 77 at 8. But it is unclear on what basis Young believes they violated that right or how that assertion relates to the facts underlying this action.

this Court.  Federal courts are not courts of appeals that can review state court decisions.[29]

And if Young is trying to raise a violation of his right to procedural due process in connection with the guardianship proceeding, that fails as well.

First, many of the defendants Young names had no connection whatsoever to the guardianship proceeding:  The Court does not see how any of those defendants, who all appear to be associated with health care facilities involved with Silmon's care, could possibly have violated Young's right to procedural due process.  And as to the defendants involved in the guardianship proceeding—except for Quatroche, who commenced that proceeding—Young's potential claims are foreclosed either by immunity or by section 1983's state action requirement.

As discussed earlier in connection with Judge Foschio's recommendation in the first R&R, Wessel Keane[30] and Glascott are entitled to the absolute immunity that

_____

[29] In fact, under the *Rooker-Feldman* doctrine, "federal district courts lack subject matter jurisdiction over disputes where a plaintiff essentially seeks review of a state-court decision."  *St. Maarten v. J.P. Morgan Chase Bank, N.A.*, 2021 WL 2217503, at *2 (E.D.N.Y. Jan. 14, 2021) (citing *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413, 415-16 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486-87 (1983)).  Although the Court need not address that issue here, it notes that at least one other court in the Second Circuit has concluded that *Rooker-Feldman* precluded it from exercising jurisdiction over claims related to an Article 81 guardianship proceeding.  *See Galanova v. Portnoy*, 432 F. Supp. 3d 433, 443-44 (S.D.N.Y. 2020) (concluding that court did "not have subject matter jurisdiction over the [c]omplaint because the plaintiffs complain either of fraud that was part of the Article 81 proceeding or of injuries sustained as a result of the Article 81 proceeding").

[30] "It is well-established that judges enjoy 'absolute immunity from suits for money damages for their judicial actions.'  Moreover, [section] 1983 provides that 'in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, [prospective] injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.'"  *Zeigler v. New York*, 948 F. Supp. 2d 271, 282 (N.D.N.Y. 2013) (first quoting *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009), then quoting 42 U.S.C. § 1983).  The Court notes that Young has sought

protects judicial officers from suit. *See supra* at 11-13. Along the same lines, as the court evaluator in an Article 81 proceeding and as the court-appointed guardian acting as an "adjunct to the New York state judicial system," Peszko and Ithna-Asheri, respectively, are entitled to quasi-judicial immunity.[31] *See Galanova v. Portnoy*, 432 F. Supp. 3d 433, 445 n.12 (S.D.N.Y. 2020) (finding that court-appointed guardian acting "as an adjunct of the New York state judicial system" was entitled to quasi-judicial immunity); *Faraldo v. Kessler*, 2008 WL 216608, at *5 (E.D.N.Y. Jan. 23, 2008) (finding that Article 81 court evaluator enjoyed quasi-judicial immunity).

Moreover, "[i]n order to state a claim under [section] 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law." *Ciambrello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002). In light of this requirement, O'Reilly (Quatroche's attorney in the guardianship proceeding) and Lazroe (Young's attorney in the proceeding) are both beyond the scope of section 1983's

---

both injunctive relief, through his motion for a preliminary injunction and temporary restraining order, *see* Docket Item 39, and damages in this case. *See* Docket Item 7 at 12 (seeking $1 billion "in monetary [d]amages against each violator per violation"). But because the Court has already concluded that there is no reason to depart from Judge Foschio's recommendation that the injunctive relief sought by Young is barred by the Anti-Injunction Act, only a possible amendment of Young's damages claims remains at issue. And for the reasons already noted, see *supra* at 11-13, amendment of those claims against Wessel Keane and Glascott would be futile because of the absolute judicial immunity to which they are both entitled. Moreover, such immunity also may extend to actions taken by the defendants affiliated with the health care providers in response to the order appointing Ithna-Asheri as Silmon's guardian. *See Galanova*, 432 F. Supp. 3d at 446 n.12 (finding defendant "likely entitled to quasi-judicial immunity as well because it was simply taking ministerial actions by complying with valid state court orders when it took the actions with respect to . . . assets in the guardianship accounts").

[31] "Quasi-judicial immunity for non-judicial officers is also an absolute immunity." *Dickerson v. Dickerson*, 2023 WL 3931696, at *4 n.5 (E.D.N.Y. June 9, 2023) (citing *Gross v. Rell*, 585 F.3d 72, 81 (2d Cir. 2009)).

reach.[32]  *See Dickerson v. Dickerson*, 2023 WL 3931696, at *4 (E.D.N.Y. June 9, 2023)

(petitioner in New York state guardianship proceeding and her attorney were private

parties not acting under color of state law); *see also Shabtai v. Shabtai*, 2021 WL

1518382, at *2 (S.D.N.Y. Apr. 16, 2021) ("The representation of a defendant by private

counsel generally does not constitute the degree of state involvement or interference

necessary to establish a claim under [section] 1983.").[33]  So of the defendants actually

involved in the guardianship proceeding, only Quatroche, the original petitioner, would

remain.  But any claim against Quatroche fails because Young has not raised any right

that Quatroche denied him.

    "A procedural due process violation occurs when the government deprives a

person of a protected life, liberty, or property interest without first providing notice and

an opportunity to be heard."  *Peterkin v. Saratoga County*, 2019 WL 6877973, at *7

(N.D.N.Y. Dec. 17, 2019) (citing *B.D. v. DeBuono*, 130 F. Supp. 2d 401, 432-33

(S.D.N.Y. 2000)); *see also JF v. Carmel Cent. Sch. Dist.*, 168 F. Supp. 3d 609, 619

(S.D.N.Y. Mar. 2, 2016) ("A procedural due process claim requires proof of two

---

[32] The ECMC defendants argue that Quatroche was not acting under color of
state law in connection with the guardianship proceeding.  *See* Docket Item 34-5 at 13-
14.  Although it is true that the court in *Dickerson* concluded that the guardianship
petitioner in that case was a private party not acting under color of state law and thus
beyond the scope of section 1983, *see Dickerson*, 2023 WL 3931696, at *4, the same
may not be true of Quatroche, who is the Chief Executive Officer of a public hospital,
*see Salters v. Hyatt*, 2022 WL 21756773, at *1 (D. Conn. Mar. 17, 2022) (concluding
that employees of public hospital were state actors); *see also Vanbrocklen v. Gupta*,
2010 WL 5575325, at *2 (W.D.N.Y. Nov. 23, 2010) (ECMC is "a public hospital").  But
as discussed below, any procedural due process claim against Quatroche fails for a
different reason.

[33] In fact, even if Ithna-Asheri were not entitled to quasi-judicial immunity, she is
also a private actor beyond the scope of section 1983.  *See Dickerson*, 2023 WL
3931696, at *4 n.6 (citing *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015)).

elements: '(1) the existence of a property or liberty interest that was deprived; and (2) deprivation of that interest without due process.'" (quoting *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012)).   Even if Young had a protected life, liberty, or property interest when he was given Silmon's power of attorney and designated as health care proxy, he was given "notice and an opportunity to be heard" about the possible revocation of both when, as he appears to acknowledge, he not only received news of the guardianship proceeding but also retained an attorney to represent him and attended relevant court proceedings.  *See* Docket Item 7 at 7 and 8.   Moreover, and as Judge Foschio noted, see Docket Item 65 at 23 n.18, Young also could have appealed the order about which he is unhappy but provides no indication that he did so.  *See Vialez v. N.Y.C. Hous. Auth.*, 783 F. Supp. 109, 113 (S.D.N.Y. 1991) ("[I]f a plaintiff had an opportunity to contest a defendant's actions but failed to do so, there can be no claim for violation of his or her procedural due process rights under 42 U.S.C. § 1983.").  The Court thus fails to see how, if given the opportunity to amend, Young would be able to possibly allege a section 1983 claim against any defendant, including Quatroche.

As to Young's claims under section 1985(3), even if Young could amend his complaint to allege his membership in a protected class—and even putting aside the immunities to which Wessel Keane, Glascott, Ithna-Asheri, and Peszko are entitled— those claims still would fail.  Young's submissions are silent as to whether any of the defendants' actions were motivated by any sort of impermissible animus, much less that those defendants ever reached a "meeting of the minds" to act on that animus.  In fact, the extent of Young's allegations are his conclusory references to a "conspiracy."  *See* Docket Item 67 at 22, 23, 24, and 25; Docket Item 95 at 5.  And "[i]t is well settled that

claims of conspiracy containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (citation and internal quotation marks omitted); *see also L.K. v. Sewanhaka Central High Sch. Dist.*, 641 F. App'x 56, 59 (2d Cir. 2016) (summary order) (affirming dismissal of section 1985 conspiracy "because [the] plaintiffs have ... failed to plead facts supporting their conclusory assertion that [the] defendants had an express understanding or tacit agreement" (citation and internal quotation marks omitted)).

And even more broadly, the facts that Young has pleaded cannot possibly suggest a race-based conspiracy to deprive him of his rights. As described earlier, the crux of Young's allegations is that a guardianship proceeding resulted in the revocation of his power of attorney and his designation as health care proxy, that his niece replaced him, and that his mother's health suffered as a result. That scenario, in which a court proceeding resulted in a guardianship order that Silmon's health care providers obeyed, strikes the Court not as a conspiracy but rather as how the guardianship system is designed to function.

The Court understands how stressful the hospitalization and health issues of Young's mother must have been for him. It is heart breaking to watch our parents age and get ill, and it must have been gut wrenching for Young not to be able to weigh in. But a state court decided that Young's niece should be Silmon's guardian, and there is nothing that this Court can do to change that or to give Young any redress.

In sum, and for the reasons stated above, this Court agrees with Judge Foschio that any amendment Young might file would be futile. Accordingly, the Court accepts

21

and adopts Judge Foschio's recommendation to deny Young's motion to amend and to dismiss his claims against Peszko, Ruffolo, the ECMC defendants, the state court defendants, and the Ellicott Center defendants without leave to amend.

## III.    CLAIMS AGAINST CHANG, LAZROE, AND ITHNA-ASHERI

Having concluded that any amendment by Young would be futile, Judge Foschio also recommended that the Court sua sponte dismiss Young's claims against Chang, Lazroe, and Ithna-Asheri—the three remaining defendants who had neither moved to dismiss nor moved for judgment on the pleadings.  *See* Docket Item 86 at 18-21.  Of those three defendants, Chang and Lazroe had answered the complaint, Docket Items 28 and 37, but not moved for judgment on the pleadings, while Ithna-Asheri may have been served,[34] Docket Item 15, but never appeared.

"[A] district court has the power to dismiss a complaint sua sponte for failure to state a claim on which relief can be granted[] as long as the plaintiff [has had] an opportunity to be heard."  *Piuggi v. Good for You Prods. LLC*, 739 F. Supp. 3d 143, 156 (S.D.N.Y. 2024) (internal quotation marks omitted) (collecting cases).  Given that Young has amended his complaint three times and made numerous other submissions, he undoubtedly has had the opportunity to be heard in this action.  And as discussed earlier, the Court fails to see how Young could plausibly allege viable claims, either under the statutes invoked in his pleadings or under 42 U.S.C. §§ 1983 or 1985(3), against any defendant in this action.[35]  This Court therefore accepts and adopts Judge

---

[34] The Court notes that the same process and service issues that were discussed in connection with the ECMC and state court defendants may well apply to Ithna-Asheri.

[35] This is even true as to Ithna-Asheri, who may have procedurally defaulted by failing to appear.  S*ee* Docket Item 86 at 20.  As Judge Foschio noted, "'a district court

Foschio's recommendation to dismiss Young's claims against Chang, Lazroe, and Ithna-Asheri sua sponte.

Moreover, although Judge Foschio concluded that Alessi had not been joined as a party to this action, *see* Docket Item 65 at 5 n.3, and did not make that same recommendation as to her, this Court will sua sponte dismiss the claims against Alessi as well. *See J.T. v. de Blasio*, 500 F. Supp. 3d 137, 195 (S.D.N.Y. 2020) (sua sponte dismissing claims against defendant where defendant "ha[d] not been properly served" and it was "apparent that the same arguments that warranted dismissal against the moving defendants warrant dismissal against the unserved defendant"). The same reasons meriting dismissal against the other defendants in this action—namely, Young's inability to pursue a claim through his asserted causes of action or, construing his submissions liberally, under 42 U.S.C. §§ 1983 and 1985(3)—apply with equal force to Alessi, whose only connection to this action is Young's listing of her name in his third amended complaint, *see* Docket Item 7 at 3.

---

need not agree that the alleged facts constitute a valid cause of action,' and the Second Circuit has 'suggested that, prior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law.'" *See id.* (quoting *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (citations and internal quotation marks omitted)). Given the immunity Ithna-Asheri enjoys as a court-appointed guardian along with the other problems with Young's claims described above, this Court concludes that Young cannot state a viable claim against her. *See Parent v. New York*, 786 F. Supp. 2d 516, 543-44 (N.D.N.Y. 2011) (dismissing federal claims against defendants who had not appeared where plaintiff had "not provided any factual allegations that could support a plausible claim" against non-appearing defendants); *see also Brown v. Trust*, 2023 WL 3092712, at *1-2 (E.D.N.Y. Apr. 26, 2023) (sua sponte dismissing claims against government attorney entitled to absolute immunity).

## CONCLUSION

For the reasons stated above and in the R&Rs, Peszko's motion to dismiss, Docket Item 23, is GRANTED; the state court defendants' motion to strike and dismiss, Docket Item 31, is GRANTED IN PART and DENIED IN PART; the ECMC defendants' motion to dismiss, Docket Item 34, is GRANTED; Ruffolo's motion for judgment on the pleadings, Docket Item 51, is GRANTED; and the Ellicott Center defendants' motion for judgment on the pleadings, Docket Item 63, is GRANTED.  Additionally, Young's motion for a preliminary injunction and temporary restraining order, Docket Item 39, is DENIED; Young's motion for a default judgment, Docket Item 46, is DENIED; Young's motion "to come now my mother got killed," Docket Item 59, is DENIED; and Young's motion to amend, Docket Item 77, is DENIED.

The claims against Peszko, the state court defendants, the ECMC defendants, Ruffolo, and the Ellicott Center defendants are therefore dismissed.  Moreover, the Court sua sponte dismisses Young's claims against Alessi, Chang, Ithna-Asheri, and Lazroe.  The Clerk of the Court shall close this case.


SO ORDERED.


Dated:      August 8, 2025
            Buffalo, New York


                                 /s/ Lawrence J. Vilardo
                                _____
                                LAWRENCE J. VILARDO
                                UNITED STATES DISTRICT JUDGE